**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**April 11, 2005**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 04-10036

ESTATE OF TROY DAVIS, By and through its Successor Administrator,
R. Dyann McCully and Lisa Jean Davis, Individually; ET AL,

Plaintiffs,

ESTATE OF TROY DAVIS, By and through its Successor Administrator,
R. Dyann McCully and Lisa Jean Davis; BARBARA JEAN DAVIS,

Plaintiffs-Appellees

versus

CITY OF NORTH RICHLAND HILLS; ET AL,

Defendants,

TOM SHOCKLEY, Chief of Police, Individually and in his official
capacity; J. A. WALLACE, Officer, Individually and in his
official capacity,

Defendants-Appellants

*************************************************************

BARBARA JEAN DAVIS,

Plaintiff-Appellee,

versus

CITY OF NORTH RICHMOND HILLS; ET AL,

Defendants,

TOM SHOCKLEY, Chief of Police, Individually and in his official
capacity; J. A. WALLACE, Officer, Individually and in his
official capacity,

Defendants-Appellants.

Appeal from the United States District Court
for the Northern District of Texas
(USDC No. 4:01-CV-1008-Y)

Before KING, Chief Judge, and HIGGINBOTHAM and DAVIS, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is an appeal from a denial of summary judgment to supervisory law enforcement officials in a suit brought under 28 U.S.C. § 1983.  The district court denied the request for summary judgment premised on qualified immunity, finding genuine issues of material fact regarding supervisory liability and the objective reasonableness of the supervisors' actions.  Persuaded that the record cannot support a conclusion that supervisory liability would attach, we reverse.

I

Police Officer Allen L. Hill, a member of the North Richland Hills Police Department ("NRHPD") SWAT team, shot and killed Troy James Davis during the execution of a no-knock search and arrest warrant at the residence of Troy James Davis and Barbara Jean Davis.  The circumstances of the raid are sharply contested.

Asserting claims pursuant to 42 U.S.C. § 1983 and state law, Davis's estate and Davis's mother, Barbara Jean Davis sued Chief of Police Tom Shockley, Police Officer J.A. Wallace, and Police

Officer Allen Hill.[1]  Plaintiffs asserted that while executing the search and arrest warrant, Officer Hill used excessive force against Davis, shooting and killing him.  Hill was the first SWAT team member to enter the home and he shot Davis within the initial two seconds.  At the time, according to Plaintiffs, Davis was in his living room, unarmed, arms outstretched and repeating "don't hurt us."  According to the police officers, upon entering the home, Hill was immediately confronted by an armed Davis standing at the end of the hallway, pointing a gun at Hill.

Plaintiffs further contended that Officer Wallace and Chief Shockley, two of Hill's supervisors, should be held liable under section 1983 for their inadequate supervision and training of Hill, resulting in Hill's use of excessive force during the raid.[2]  According to Plaintiffs, Wallace and Shockley knew prior to the shooting that Hill was "prone to use excessive and/or deadly force without cause," that Hill had "a reputation for displaying lewd and criminal behavior while on and off-duty," and that Hill's "employment history branded and identified him as dysfunctional and unfit for police work."

Shockley and Wallace, along with the other defendants, moved

<hr>

[1] Lisa Jean Davis was also a plaintiff in her individual capacity in the original complaint in No. 4:00-CV-438-Y.  She is no longer a plaintiff.  Barbara Jean Davis later filed a separate complaint in No. 4:01-CV-1008-Y, which was then consolidated.

[2] Neither Wallace nor Shockley actually participated in the raid.  Officer Wallace, the SWAT Team commander, was present outside Davis's house at the time.  Chief Shockley was not present at the house.

for summary judgment based on qualified immunity. The district court determined that Plaintiffs produced evidence demonstrating a genuine issue of material fact whether Shockley and Wallace were deliberately indifferent to Hill's propensity to use excessive force, whether their conduct was objectively unreasonable in light of clearly established constitutional law.

The district court noted that the following evidence supported supervisory liability: testimony from Ann Shelton, a former member of the NRHPD SWAT team, indicating that Hill fired his weapon on three occasions during training exercises when the scenarios did not call for the firing of a weapon; a background investigation report indicating that Hill had a tendency to act too aggressively; and testimony of Randy Cole, a citizen who was pulled over by Hill for a traffic violation, indicating that Hill behaved "like a psycho" and was "going to kill somebody."[3] The district court found that the seriousness of the SWAT team training incidents was magnified when laid against Cole's allegations. Further, the district court found evidence that Hill had a reputation for exposing himself, including during a team photograph at SWAT team training--a reputation that earned him the nickname "Penie."

The district court concluded that Shockley and Wallace were not as a matter of law entitled to qualified immunity on the

---

[3] *Davis v. City of North Richland Hills*, No. 4:00-CV-438-Y, at *45 n.50, *46-*48 (N.D. Tex. Sept. 30, 2003) (order partially granting summary judgment for defendants) (consolidated with No. 4:01-CV-1008-Y) (unpublished).

4

supervisory liability claims and also denied summary judgment to Hill on the excessive force claim.[4] Shockley and Wallace ("Appellants") filed this appeal.[5]

## II

We must first address our jurisdiction. Ordinarily, we do not have jurisdiction to review a district court's denial of a motion for summary judgment because such a decision is not a final judgment within the meaning of 28 U.S.C. § 1291.[6] However, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291."[7]

"When a district court denies summary judgment on the basis that genuine issues of material fact exist, it has made two distinct legal conclusions: that there are 'genuine' issues of fact in dispute, and that these issues are 'material.'"[8] "'[W]e can

---

[4] The district court granted summary judgment to Shockley, Wallace, Hill, and the other police officers named as defendants as to all of Plaintiffs' remaining claims.

[5] Hill is not an appellant in this case.

[6] *Reyes v. City of Richmond*, 287 F.3d 346, 351 (5th Cir. 2002); *Lemoine v. New Horizons Ranch & Ctr., Inc.*, 174 F.3d 629, 633 (5th Cir. 1999).

[7] *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *see Kinney v. Weaver*, 367 F.3d 337, 346 (5th Cir. 2004) (en banc) ("Although a denial of a defendant's motion for summary judgment is ordinarily not immediately appealable, the Supreme Court has held that the denial of a motion for summary judgment based upon qualified immunity is a collateral order capable of immediate review.").

[8] *Reyes*, 287 F.3d at 351; *see also Bazan ex rel. Bazan v. Hidalgo Co.*, 246 F.3d 481, 490-91 (5th Cir. 2001) (no jurisdiction to review whether evidence is sufficient to "support a finding that particular conduct occurred" (emphasis omitted)).

5

review the *materiality* of any factual disputes, but not their *genuineness*.'"[9]  "An officer challenges materiality when he contends that 'taking all the plaintiff's factual allegations as true no violation of a clearly established right was shown.'"[10]  We determine whether a denial of summary judgment based on qualified immunity is immediately appealable by "look[ing] at the legal argument advanced."[11]

Appellants argue, *inter alia*, that even if Plaintiffs' factual allegations are taken as taken as true, they are "not sufficient to constitute either gross negligence or deliberate indifference by the supervisors."  The issue of whether the evidence is sufficient to demonstrate deliberate indifference for supervisory liability is a legal issue that this court may review on interlocutory appeal.[12]  Appellants challenge the materiality of the disputed facts, and we

---

[9] *Kinney*, 367 F.3d at 347 (quoting *Wagner v. Bay City*, 227 F.3d 316, 320 (5th Cir.2000)); *Chui v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 279 (5th Cir. 2003).

[10] *Reyes*, 287 F.3d at 351 (citation and emphasis omitted); *see also Kinney*, 367 F.3d at 348 ("[We] consider only whether the district' court erred in assessing the legal significance of the [purported] conduct.").

[11] *Reyes*, 287 F.3d at 350.

[12] *See Gros v. City of Grand Prairie*, 209 F.3d 431, 436 (5th Cir. 2000) (holding that because evidence relied upon by the district court in denying summary judgment to supervisory defendant in section 1983 action was insufficient to demonstrate deliberate indifference, evidence was immaterial and summary judgment should have been granted); *Lemoine*, 174 F.3d at 635 (holding that summary judgment evidence was "immaterial because it [was] insufficient as a matter of law to demonstrate that appellants acted with anything more than negligence").

have jurisdiction.[13]

### III

In an interlocutory appeal from the denial of a summary judgment motion based on qualified immunity, "we do not apply the standard of Rule 56 but instead consider only whether the district court erred in assessing the legal significance of the conduct that the district court deemed sufficiently supported for purposes of summary judgment."[14] We review *de novo* "the district court's conclusions concerning the legal consequences--the materiality--of the facts."[15] We consider the facts in the light most favorable to Plaintiffs as the non-moving party.[16]

### IV

Appellants argue that Plaintiffs have not overcome the bar of qualified immunity--that there are no material issues of fact because, even in the light most favorable to Plaintiffs, the evidence is insufficient to demonstrate supervisory liability. We agree.

### A

---

[13] Insofar as any of Appellants' arguments challenge the genuineness of the fact issues identified by the district court, we lack jurisdiction to review.

[14] *Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc) (citing *Behrens v. Pelletier*, 516 U.S. 299, 313 (1996); *Johnson v. Jones*, 515 U.S. 304, 313 (1995)); *see* FED. R. CIV. P. 56.

[15] *Id.* at 349 (citing *Lemoine*, 174 F.3d at 634).

[16] *Id.* at 348 ("Where factual disputes exist in an interlocutory appeal asserting qualified immunity, we accept the plaintiffs' version of the facts as true.").

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[17] Qualified immunity is

> an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law. The entitlement is an immunity from suit rather than a mere defense to liability . . . .[18]

As we recently noted, "[b]efore this court--or any court--can adjudicate the merits" of Plaintiffs' claims, they "must overcome the bar of qualified immunity."[19] Once raised, a plaintiff has the burden to rebut the qualified immunity defense "by establishing that the official's allegedly wrongful conduct violated clearly established law. We do not require that an official demonstrate that he did not violate clearly established federal rights; our

---

[17] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Thompson v. Upshur Co.*, 245 F.3d 447, 456 (5th Cir. 2001).

[18] *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (emphasis omitted).

[19] *Roberts v. City of Shreveport*, 397 F.3d 287, 291 (5th Cir. 2005); *cf. Camilo-Robles v. Hoyos*, 151 F.3d 1, 8 (1st Cir. 1998) ("[C]ourts are well-advised to separate 'qualified immunity' analysis from 'merits' analysis whenever practicable. In some circumstances, however, these inquiries overlap. . . . Since our inquiry into objective legal reasonableness involves deliberate indifference, however, we are compelled to engage the merits to a greater extent than is usual.").

precedent places that burden upon plaintiffs."[20] Qualified immunity "provides ample protection to all but the plainly incompetent or those who knowingly violate the law."[21]

B

Plaintiffs have alleged the violation of the constitutional right to be free of excessive force under the Fourth Amendment.[22] Here, Plaintiffs seek to hold Appellants Wallace and Shockley liable as supervisors of Hill. Supervisory officials cannot be held liable under section 1983 for the actions of subordinates, such as Hill, on any theory of vicarious or *respondeat superior* liability.[23] Rather, Plaintiffs must show that the conduct of the supervisors denied Davis his constitutional rights.[24] When, as here, a plaintiff alleges a failure to train or supervise, "the plaintiff must show that: (1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link

---

[20] *Pierce v. Smith*, 117 F.3d 866, 71-72 (5th Cir. 1997) (citations and internal quotation marks omitted); *see also McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) ("When a defendant invokes qualified immunity, the burden is on the plaintiff to demonstrate the inapplicability of the defense.").

[21] *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

[22] *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001); *see also Graham v. Connor*, 490 U.S. 386, 397-99 (1989) (describing objective reasonableness test for evaluating excessive force claims under Fourth Amendment); *Tennessee v. Garner*, 471 U.S. 1, 7 (1985) ("[T]here can be no question that apprehension by the use of deadly force is a seizure subject to . . . the Fourth Amendment").

[23] *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Evett v. DETNTFF*, 330 F.3d 681, 689 (5th Cir. 2003); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999); *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).

[24] *See Evett*, 330 F.3d at 689; *Thompkins*, 828 F.2d at 304.

9

exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."[25]

With respect to the third prong, we have on several occasions reversed a district court's denial of qualified immunity, persuaded that support was lacking for a conclusion of deliberate indifference on the part of a supervisor.[26] "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[27] "For an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."[28] Deliberate indifference requires a showing of more than negligence or even gross negligence.[29] "Actions and decisions by officials that are

---

[25] *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998); *see Burge v. St. Tammany Parish*, 336 F.3d 363, 370 (5th Cir. 2003); *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003); *Thompson*, 245 F.3d at 459; *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452-54 & nn.7-8 (5th Cir. 1994) (en banc) (adopting the *City of Canton v. Harris*, 489 U.S. 378 (1989), standard of municipal liability--that is, requiring at least deliberate indifference--for supervisory liability).

[26] *See, e.g.*, *Roberts*, 397 F.3d at 292; *Evett*, 330 F.3d at 689-90; *Cozzo*, 279 F.3d at 287-88; *Gros*, 209 F.3d at 436; *Doe*, 15 F.3d at 457-58; *see also Cousin*, 325 F.3d at 637 (affirming grant of summary judgment based on qualified immunity where evidence is insufficient to create a genuine issue of material fact as to deliberate indifference of supervisor); *Alton*, 168 F.3d at 201 (same).

[27] *Board of County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (*Bryan County*).

[28] *Smith*, 158 F.3d at 912 (internal quotation marks and citations omitted).

[29] *City of Canton,* 489 U.S. at 388; *Doe*, 15 F.3d at 453.

merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity."[30]  "To satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is 'obvious and obviously likely to result in a constitutional violation.'"[31]  "[I]t may happen that in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights," a supervisor might reasonably be found to be deliberately indifferent.[32]

C

We are persuaded that there is no material issue on the record before us with respect to the question of whether Appellants were deliberately indifferent.  Because this case falters on the requirement of deliberate indifference, we need not address the other two prongs of supervisory liability.

The district court carefully detailed the evidence that Plaintiffs relied upon in support of their supervisory liability claims:

> (1) testimony [regarding SWAT team training exercises] from Ann Shelton, a former NRHPD

---

[30] *Alton*, 168 F.3d at 201.

[31] *Cousin*, 325 F.3d at 637 (quoting *Thompson*, 245 F.3d at 459).

[32] *City of Canton*, 489 U.S. at 390; *see Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998).

11

SWAT team member, indicating that Shockley and Wallace knew or should have known that Hill was likely to fire his weapon inappropriately or illegally;

(2) Shelton's testimony that prior to the shooting of Troy Davis, when Hill intentionally exposed himself during the snapping of a team photograph at SWAT training exercise . . . Shockley and Wallace failed to take adequate disciplinary action against Hill . . .;

(3) evidence that Hill frequently exposed himself to other members of the NRHPD and, as a result, had acquired the nickname "Penie";

(4) evidence in Hill's background investigation showing Hill had a propensity for violence; [and]

(5) testimony that Shockley and Wallace failed to take any action after receiving a complaint from Randy Cole, a citizen who had been pulled over by Hill for a traffic violation prior to the shooting death of Troy Davis, [in the course of which Cole claimed to Shockley and Wallace that] Hill was a "rogue" cop, behaved "like a psycho" and was "going to kill somebody."[33]

Even accepted as true and taken as a whole, the above evidence is legally insufficient--and thus not material--to support a finding of deliberate indifference.

_____

[33] *Davis*, No. 4:00-CV-438-Y, at *43-*45 & n.50 (footnotes and citations omitted, line breaks added). One piece of evidence, the "failure of Shockley or Wallace to take any immediate disciplinary action against any of the defendant officers after Ann Shelton's nameplate appeared in photographs from the crime scene at the Davises' residence," *id*. at *45, has been omitted from our discussion. As Appellants correctly point out, it is a non-starter because it involves actions after the alleged constitutional violation.

We are persuaded that these facts do not demonstrate a prior pattern by Hill of violating constitutional rights by employing excessive force. We have stressed that a single incident is usually insufficient to demonstrate deliberate indifference.[34] In *Cousin v. Small*, for example, we held that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a *pattern of violations*."[35] Similarly, in *Snyder v. Trepagnier*, we held that "proof of a single violent incident ordinarily is insufficient" for liability.[36] Rather, the "plaintiff must demonstrate 'at least a pattern of *similar*

---

[34] *See, e.g.*, *Cozzo*, 279 F.3d at 288; *Thompson*, 245 F.3d at 459; *Snyder*, 142 F.3d at 798. Plaintiffs' attempt to distinguish the present case as involving supervision as opposed to training is unpersuasive. Claims of inadequate supervision and claims of inadequate training both generally require that the plaintiff demonstrate a pattern. *Burge*, 336 F.3d at 370 (proof of deliberate indifference "generally requires a showing 'of more than a single instance of the lack of training or supervision causing a violation of constitutional rights'" (quoting *Thompson*, 245 F.3d at 459)); *accord Cousin*, 325 F.3d at 637; *cf. Brown v. Bryan County*, 219 F.3d 450, 462 (5th Cir. 2000) (concluding that single decision constituted "deliberate indifference" where there was "*no* training (and *no* supervision)" of the subordinate).
We note that in some instances there might be a relevant distinction between cases involving inadequate *hiring* and cases involving failure to supervise or train. *See Bryan County*, 520 U.S. at 410 (cautioning against wholly importing the reasoning of training cases into the hiring context and noting that "[u]nlike the risk from a particular glaring omission in a training regimen, the risk from a single instance of inadequate screening of an applicant's background is not 'obvious' in the abstract; rather it depends upon the background of the applicant"); *see also Brown*, 219 F.3d at 461 (noting that the Supreme Court in *Bryan County* rejected the attempt to analogize hiring claims to failure-to-train claims "because of the greater predictability of the consequences that flow from the failure to train an employee").

[35] *Cousin*, 325 F.3d at 637 (emphasis added).

[36] 142 F.3d at 798.

13

*incidents in which the citizens were injured.'"*[37]  Moreover, a showing of deliberate indifference requires that the Plaintiffs "show that the failure to train reflects a 'deliberate' or 'conscious' choice to endanger constitutional rights."[38]

Prior indications cannot simply be for any and all "bad" or unwise acts, but rather must point to the specific violation in question.[39]  That is, notice of a pattern of *similar* violations is required.[40]  While the specificity required should not be exaggerated, our cases require that the prior acts be fairly similar to what ultimately transpired and, in the case of excessive use of force, that the prior act have involved injury to a third party.[41]

None of the facts highlighted by the district court indicated use of excessive force against a third party resulting in injury.

---

[37] *Id.* at 798-99 (emphasis added) (quoting *Rodriguez v. Avita*, 871 F.2d 552, 554-55 (5th Cir. 1989))

[38] *Id.* at 799 (citing *City of Canton*, 489 U.S. at 109).

[39] *Id.* at 798; *see also Burge*, 336 F.3d at 371 (evidence "not sufficient to establish deliberate indifference or knowledge" that a constitutional violation "would be a highly likely consequence"); *cf. Bryan County*, 520 U.S. at 412 (holding that a finding of supervisory liability for inadequate screening "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff").

[40] *See Roberts*, 397 F.3d at 294 (rejecting plaintiffs' proffered pattern where it required "an excessively high level of generality").

[41] *See, e.g.*, *Snyder*, 142 F.3d at 798 ("[P]laintiff must demonstrate at least a pattern of similar incidents in which the citizens were injured." (internal quotation marks and citation omitted)); *see also Gros*, 209 F.3d at 435 (noting in hiring case that subordinate had never "used excessive force against any third party").

First, while Hill's over-"exposed" photography stunt[42] and his earned nickname collectively demonstrate lack of judgment, crudity, and, perhaps illegalities, they do not point to past use of excessive force.[43] Similarly, the traffic stop,[44] while perhaps improper in its own right, did not involve excessive force with a deadly weapon resulting in harm to a citizen in a context similar to the present case.[45]

---

[42] The district court found that Hill was suspended for two weeks as a result of the photography incident. *Id.* at *44 n.47.

[43] *See Roberts*, 397 F.3d at 294 ("We do not deny that this evidence appears to reflect badly on [the subordinate's] judgment, but it proves nothing about [the subordinate's] actual use of deadly force in the much different context of this case, nor is it relevant to whether [the supervisor] was on notice that [the subordinate] might use excessive force when confronted with a speeding vehicle while standing in the street directing traffic.").

[44] The district court recounted that Cole, in his complaint, stated that during the traffic stop Hill became "very angry . . ., pounded on Cole's window, threatened to take him to jail, ordered him out of his car, and made him lean up against the car with his hands behind his back." Davis, No. 4:00-CV-438-Y, at *45 n.50. Cole characterized Hill as a "'rogue' cop" who "behaved 'like a psycho' and was 'going to kill somebody.'" *Id.*

[45] Cole's traffic stop allegations, even assuming them to be true and brought to the attention of Shockley and Wallace, are unsubstantiated. In *Gros v. City of Grand Prairie*, assessing a claim of deliberate indifference, we noted that although there was a complaint that the police officer improperly drew his weapon during a traffic stop, that complaint had not been sustained. 209 F.3d at 435.
Another court has similarly refused to place much weight on such allegations in considering a municipality's section 1983 liability and noted that "[i]t would be *perverse* to require that courts exclude allegations of past wrongdoing in order to protect the rights of defendants, while at the same time demanding that police officials give credence to unsubstantiated complaints against individual police officers." *Brooks v. Scheib*, 813 F.2d 1191, 1194 (11th Cir. 1987).
This line of thinking is not without merit, helping to guard against allowing unsubstantiated complaints--of which, even in the absence of wrongdoing, there are likely many, especially by those on the receiving end of a traffic stop--to undermine the prohibition against collapsing supervisory liability into "functionally the *respondeat superior* regime the Supreme Court has repeatedly rejected." *Pineda v. City of Houston*, 291 F.3d 325, 330 (5th Cir. 2002); *see Bryan County*, 520 U.S. at 410 ("To prevent municipal liability . . . from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury

By comparison, in *Roberts v. City of Shreveport*, we recently held that a habit of displaying a firearm during traffic stops does not constitute a relevant pattern with respect to *using deadly force* during a traffic stop.[46] Here, there is no evidence that Hill had previously improperly displayed his weapon to a third party, or used excessive force.

Second, Hill's inappropriate use of his gun during training is, at first blush, more troubling. Hill inappropriately fired his weapon in mock settings apparently much like the scene in which Hill ultimately shot Davis. However, because it was a training exercise it is undisputed that no one's constitutional rights were violated and that Hill never used excessive force against a third party.

Furthermore, we hesitate in analyzing supervisory liability to place too much emphasis on mistakes during training. We are wary of creating incentives to conduct *less* training so as to minimize the chance that a subordinate will make a training mistake that can be used against the supervisor if that subordinate later makes a mistake in the course of duty. More to the point, in training

---

alleged."); *cf*. *Brooks*, 813 F.2d at 1193 ("[T]he number of complaints bears no relation to their validity. . . . [T]here is a logical explanation as to why a large number of complaints have been lodged against [the officer]: [he] patrolled a high crime area [where] experienced 'customers' frequently use citizens' complaints as a means of harassing officers who arrest them.").

In any case, because there is no evidence that Hill used excessive force during the traffic stop, even giving the single complaint full credence, it is immaterial in the context of the record before us.

[46] 397 F.3d at 294.

mistakes are the fodder and "adequately trained officers occasionally make mistakes; the fact that they do says little about the training program or the legal basis" for holding a supervisor liable.[47] Even if a fact finder were to infer that Hill's training did not stick or that he resisted it, the incidents in training did not effect a violation of a third party's rights. On this record, Appellants cannot be deemed deliberately indifferent by failing to supervise or train differently.

Third, as to the background report indicating that Hill "comes off too aggressive at times," there is no evidence to suggest that either Wallace or Shockley was aware of it, and the district court did not impute knowledge of the report to either of them.[48]

Finally, the facts here stand in stark contrast to those in a case like *Camilo-Robles v. Hoyos* where the First Circuit affirmed the denial of qualified immunity for police supervisory officials.[49] In *Camilo-Robles*, the court recounted a subordinate officer's service record, terming it "a career to make St. Sebastian weep."[50]

---

[47] *City of Canton*, 489 U.S. at 391.

[48] *See Smith*, 158 F.3d at 912 ("[T]he official must . . . be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists . . . ." (internal quotation marks and citations omitted)); *see also Wassum v. City of Bellaire*, 861 F.2d 453, 456-57 (5th Cir. 1988).

Moreover, were we to analyze the evidence in the report in a manner similar to a deficient hiring case, it would fall short of the stringent standard for such cases. *See Bryan County*, 520 U.S. at 410; *Gros*, 209 F.3d at 436; *Aguillard v. McGowen*, 207 F.3d 226 (5th Cir. 2000).

[49] 151 F.3d at 14-15.

[50] *Id.* at 4.

The subordinate had a known history of assaulting his wife, holding hostages at gunpoint at the police station, assaulting another civilian, and shooting two law-abiding neighborhood residents (one of them died).[51] In light of this background, the court held that qualified immunity was properly denied to police supervisors who had rearmed and helped put this officer back to work, at which point another incident predictably occurred. The present case, lacking a pattern of excessive force against a third party, falls far short of the subordinate's "career" in *Camilo-Robles*.[52]

In sum, there is no conduct from which it could be reasonably concluded that these supervisors made a deliberate or conscious choice to endanger constitutional rights.

2

We do not suggest that a single incident, as opposed to a pattern of violations, can never suffice to demonstrate deliberate indifference.[53] It is true that there is a so-called "single incident exception," but it is inherently "a narrow one, and one

---

[51] *Id.* at 5, 14-15. The court noted that "[h]is record reflects numerous disciplinary infractions involving violent and/or threatening behavior--we count at least eighteen--many of which entailed unwarranted brandishing of his weapon." *Id.* at 5.

[52] We also note that we have never adopted the First Circuit's test for deliberate indifference, which the district court followed. *See Davis*, No. 4:00-CV-438-Y, at *42 ("'To demonstrate deliberate indifference a plaintiff must show (1) a grave risk of harm, (2) the defendant's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the risk.'" (quoting *Camilo-Robles*, 151 F.3d at 7)).

[53] *See Brown*, 219 F.3d at 462.

that we have been reluctant to expand."[54]  "To rely on this exception, a plaintiff must prove that the 'highly predictable' consequence of a failure to train would result in the specific injury suffered, and that the failure to train represented the 'moving force' behind the constitutional violation."[55]  Hill's history does not fall within this exception.

We did find a single incident to suffice in *Brown v. Bryan County*, concluding that there was an utter failure to train and supervise.[56]  We later observed that we found liability in *Brown* for a single incident when the county "failed to provide *any* training or supervision for a young, inexperienced officer with a record of recklessness," while also noting that "there is a difference between a *complete failure to train*, as in [*Brown v. Bryan County*], and a failure to train in one limited area."[57]

In contrast, here, there *was* training and Plaintiffs have not shown that those training sessions were so deficient as to constitute deliberate indifference.  The training sessions were in

_____

[54] *Burge*, 336 F.3d at 373 (citing *Pineda*, 291 F.3d at 334-35); *see Gabriel v. City of Plano*, 202 F.3d 741, 745 (5th Cir. 2000) ("We have consistently rejected application of the single incident exception and have noted that 'proof of a single violent incident ordinarily is insufficient to hold a municipality liable for inadequate training.'" (quoting Snyder v. Trepagnier, 142 F.3d 791, 798 (5th Cir.1998))); *see also Conner v. Travis County*, 209 F.3d 794, 797 (5th Cir. 2000).

[55] *Roberts*, 397 F.3d at 295 (quoting *Brown*, 219 F.3d at 461).

[56] 219 F.3d at 462.

[57] *Cozzo*, 279 F.3d at 288 (internal quotation marks and citations omitted) (emphasis added in *Cozzo*); *see also Roberts*, 397 F.3d at 295-96 (distinguishing *Brown v. Bryan County*).

fact right on point, albeit a trier of fact might conclude not completely successful with Hill.  It is not enough to say that more or different training or supervision would have prevented the result of the ill-fated raid.[58]

V

We are persuaded that qualified immunity should have been granted to Shockley and Wallace and we must reverse the decision not to do so.

REVERSED.

---

[58] *See City of Canton*, 489 U.S. at 392 ("In virtually every instance where a person has had his or her constitutional rights violated by a city employee, a § 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate incident."); *see also Roberts*, 397 F.3d at 293 ("[M]ere proof that the injury could have been prevented if the officer had received better or additional training cannot, without more, support liability.").