# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2015

Lyle W. Cayce
Clerk

No. 13-50890

E.A.F.F.; D.A.E.F.; E.R.J.; J.C.C.B.; P.A.S.G.; E.H.C.; W.O.G.; J.M.R.;
J.A.A.L.; O.E.F.; O.B.,

Plaintiffs – Appellants

v.

JOSE GONZALEZ, in His Personal Capacity; JAMES DE LA CRUZ, in His
Personal Capacity; TSEGAYE WOLDE, in His Personal Capacity,

Defendants – Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:08-CV-124

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Eleven unaccompanied Central American minors, who were detained by the United States at a facility in Nixon, Texas pending immigration proceedings, filed suit against certain federal officials in their individual capacities claiming deliberate indifference to a known risk of physical and sexual abuse. The district court granted the defendants' motion for summary

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-50890

judgment on the basis of qualified immunity. On appeal, the plaintiffs argue the district court erred in finding there was no genuine dispute of material fact as to whether the defendants manifested deliberate indifference to the minors' constitutional rights. We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The eleven plaintiffs are from Central America. At different times, they entered the United States as unaccompanied teenage boys. Each was apprehended by Texas Border Patrol agents and placed in federal custody pending immigration court proceedings. Because they were minors at the time of detention, each plaintiff was placed in a facility in Nixon, Texas that was specially designated for the custody of unaccompanied alien children ("UAC"). The Nixon facility was operated by a private organization, Away From Home, Inc. ("AFH"), which had contracted with the federal government to house UAC while they awaited adjudication of their immigration status.

Responsibility for monitoring the placement and care of UAC was previously delegated to the Immigration and Naturalization Service. In 2003, this responsibility was transferred to the Office of Refugee Resettlement ("ORR"), a division of the Department of Health and Human Services. ORR identifies facilities to house UAC and oversees and investigates those facilities. ORR created a special division, the Division of Unaccompanied Children's Services ("DUCS"), to carry out these responsibilities. DUCS developed a network of care options for UAC, including shelter care facilities. Shelter care facilities are designed to house UAC in the least restrictive setting possible to comply with what is called the *Flores* Settlement Agreement. That agreement resulted from a lawsuit brought by detained unaccompanied minors and sets minimum standards of care for facilities housing UAC. AFH received a grant

2

No. 13-50890

to operate the Nixon facility as a shelter care facility beginning in 2003. The Nixon facility continuously housed UAC until 2007, when ORR revoked the grant.

The plaintiffs allege that they were physically or sexually abused between September 2006 and March 2007 while they were residents at the Nixon facility. This appeal relates to the following allegations of abuse.

Plaintiff O.E.F. alleges that staffers beat him twice in the fall of 2006. Once, a Nixon employee struck him across the torso, leaving bruises. On another occasion a staffer pulled him from his bunk to the floor and beat him.

Plaintiff W.O.G. asserts he was sexually assaulted in the shower by a Nixon supervisor, Lesvia Monreal, then was later beaten by an unidentified male staffer.

Plaintiff J.M.R. complains of an incident that occurred in November 2006, involving several UAC who fled the Nixon facility. Following the escape, Director of Operations Robert Garza, Director of Training Efraem Garcia, and two other staffers allegedly arrived at the facility while intoxicated. Garcia slammed J.M.R. against the walls and a door. J.M.R. was allegedly beaten again the next morning by another staffer.

The remaining eight plaintiffs allege that a female Nixon staffer, Belinda Leal, repeatedly sexually abused them between December and March. Leal later pleaded guilty to charges stemming from the abuse and was sentenced to prison.

The defendants are three current and former ORR administrators and supervisors. Defendant Jose Gonzalez was hired as an ORR Federal Field Specialist ("FFS") in August 2006. Gonzalez was based in San Antonio and was assigned to Nixon and to two other facilities in Texas. An FFS oversees the services provided to UAC and assists with program compliance by visiting

3

facilities and providing oversight and guidance to staff regarding ORR policies and procedures.  Gonzalez visited the Nixon facility frequently; had an office there; and held staff meetings there about once a week with the Nixon director, case managers, clinicians, and others.  Gonzalez estimated that he spent about sixty percent of his time at Nixon.

Defendant James De La Cruz was an ORR FFS supervisor based in Houston.  De La Cruz started as a supervisor in April 2005 and supervised Gonzalez's work at Nixon.  His primary responsibilities included monitoring program compliance; addressing problems with child transfers and staff training; and, along with Gonzalez, serving as a liaison to the Texas Department of Family Protective Services.

Defendant Tsegaye Wolde became an ORR Project Officer in March 2004 and was assigned to monitor and supervise the Nixon facility.  Wolde was based in Washington, D.C. and was responsible for overseeing day-to-day operations related to Nixon's grant of federal funds and the cooperative agreement with the government.

The plaintiffs have filed multiple claims against various individuals in Texas.  They alleged that the United States was liable under the Federal Tort Claims Act ("FTCA") for negligent supervision of the Nixon facility and negligent care of the minors housed there.  The plaintiffs also filed a *Bivens* suit against Gonzalez, De La Cruz, and Wolde, alleging they were deliberately indifferent to the plaintiffs' Fifth Amendment right to be free from physical, emotional, and sexual abuse.

The district court dismissed the FTCA claims against the United States. It concluded that the government was immune from liability based on the "independent contractor" and "discretionary function" exceptions. The district court also granted summary judgment for Gonzalez, De La Cruz, and Wolde

on the basis of qualified immunity. The court held that the evidence was insufficient to demonstrate that the defendants were: (1) aware of a substantial risk of abuse or (2) deliberately indifferent to that risk.

The plaintiffs appeal only from the judgment granting qualified immunity to the individual defendants.

## DISCUSSION

This court reviews a grant of summary judgment *de novo*, applying the same standards as the district court. *Mack v. City of Abilene*, 461 F.3d 547, 555 (5th Cir. 2006). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).

### I.    *The FTCA's Judgment Bar*

The defendants allege that the plaintiffs' *Bivens* claims against the individual officials are precluded by the FTCA's judgment bar. The FTCA's judgment bar states: "The judgment in an action under section 1346(b) of this title shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim." 28 U.S.C. § 2676. According to the defendants, the statute's reference to "[t]he judgment" should be construed broadly as a reference to "any judgment," regardless of whether the claim was adjudicated on the merits. The defendants therefore argue that the dismissal of the plaintiffs' FTCA claims against the United States for lack of jurisdiction bars their *Bivens* claims against the individual federal officials.

The defendants have raised this argument for the first time on appeal. We do not consider evidence or arguments that were not presented to the

No. 13-50890

district court for its consideration in ruling on the motion. *Tradewinds Envtl. Restoration, Inc. v. St. Tammany Park, LLC*, 578 F.3d 255, 262 (5th Cir. 2009). Because the defendants failed to present this argument to the district court, they have waived review of the issue on appeal.

II.    *Qualified Immunity*

The plaintiffs contend that the district court erred in granting Gonzalez, De La Cruz, and Wolde summary judgment on the basis of qualified immunity.

The plaintiffs filed suit against the individual federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). "Under *Bivens*, a person may sue a federal agent for money damages when the federal agent has allegedly violated that person's constitutional rights." *Brown v. Nationsbank Corp.*, 188 F.3d 579, 590 (5th Cir. 1999). "However, the government actor may be entitled to qualified immunity protecting him from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Doe v. Robertson*, 751 F.3d 383, 387 (5th Cir. 2014) (internal quotations and citation omitted).

The analysis of a defense of qualified immunity involves two steps. "First, a court must decide whether a plaintiff's allegation, if true, establishes a violation of a clearly established right." *Hernandez ex rel. Hernandez v. Tex. Dep't of Protective & Regulatory Servs.*, 380 F.3d 872, 879 (5th Cir. 2004) (citation omitted). Second, a court must decide whether the conduct was objectively reasonable in light of clearly established law at the time of the incident. *Id.* "Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Id.*

No. 13-50890

The party seeking summary judgment generally bears the burden of establishing that there are no genuine disputes of material fact. *Norwegian Bulk Transp. A/S v. Int'l Marine Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). But when a defense of qualified immunity is properly raised, the burden shifts to the plaintiff to negate the defense. *See Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012).

Whether the plaintiffs have alleged a violation of a clearly established right, as required under the first step of this court's qualified immunity analysis, is not at issue. Rather, the dispute concerns the second part of the qualified immunity inquiry, i.e., whether the defendants' conduct was objectively reasonable in light of clearly established law at the time of the incidents. When a detainee alleges that a government official's episodic act or omission violated his Fifth Amendment due process right to protection from harm, this court must determine whether the official exhibited deliberate indifference under the standard set forth by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825 (1994). *See also Hare v. City of Corinth, Miss.*, 74 F.3d 633, 647 (5th Cir. 1996). The episodic act or omission alleged in this case is a failure to protect the defendants from physical, emotional, and sexual abuse.[1]

---

[1] We recognize that the complaint contains allegations of both failure to protect and failure to properly train and supervise. In their briefs, the parties do not recognize any distinction between the claims or the reality that review of the two claims requires a slightly different analysis. For a failure to train or supervise claim, a plaintiff must show: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis ex rel. McCully v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005) (quotations and citation omitted). A failure to protect claim, however, requires only a consideration of whether the official was deliberately indifferent. *See Hare*, 74 F.3d at 650.

Because the plaintiffs have adequately briefed only the failure to protect claim, it is not entirely clear whether they are appealing only the ruling on that claim or the rulings on both claims. We need not decide. The plaintiffs assert that the exclusive issue on appeal is "deliberate indifference." Thus, to the extent that the plaintiffs are appealing the district court's decision on the failure to train and supervise claim, they are only appealing the court's

Thus, this court must consider whether the defendants were deliberately indifferent to such abuse.

Deliberate indifference lies "somewhere between the poles of negligence at one end and purpose or knowledge at the other." *Farmer*, 511 U.S. at 836. To satisfy the standard for deliberate indifference, a plaintiff must establish that an official consciously disregarded a substantial risk of harm. *Robertson*, 751 F.3d at 392. "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent do not amount to deliberate indifference and do not divest officials of qualified immunity." *Alton v. Tex. A&M Univ.*, 168 F.3d 196, 201 (5th Cir. 1999). There must be proof of culpability "beyond mere negligence or even gross negligence." *Hernandez*, 380 F.3d at 882 (citations omitted).

Under the deliberate indifference standard, government officials will be liable for episodic acts or omissions resulting in the violation of a detainee's clearly established constitutional rights only if they: (1) had subjective knowledge of a substantial risk of harm to the detainee and (2) responded with deliberate indifference to that risk. *Jacobs v. W. Feliciana Sheriff's Dep't*, 228 F.3d 388, 393–94 (5th Cir. 2000).

This standard requires the court first to determine whether the official had a subjective awareness of a substantial risk of harm. An "official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. Whether an official had the requisite knowledge is a question of fact, which may be demonstrated "in the usual ways, including

---

decision under the third prong of the analysis: whether the defendants were deliberately indifferent. We analyze this case exclusively as a failure to protect case, while noting that the analysis of deliberate indifference in the failure to protect context applies with equal weight to the third prong of the failure to train and supervise claim.

inference from circumstantial evidence . . . ." *Id.* at 842. Actual notice of an existing risk would provide the strongest form of evidence. As the district court correctly noted, though, the obviousness of a risk may also serve as sufficient evidence to establish an official's subjective awareness. *Id.*; *Hernandez*, 380 F.3d at 881.

Even if a court finds subjective awareness, an official may be found liable only if the court determines that the official acted with deliberate indifference by consciously disregarding the danger. *Jacobs*, 228 F.3d at 395. An official's response need only be reasonable. Officials "may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer,* 511 U.S. at 844.

There is a "somewhat confusing relationship between the deliberate indifference and objective reasonableness standards . . . ." *Jacobs*, 228 F.3d at 394. In an appeal on qualified immunity, we "are to determine whether, in light of the facts as viewed in the light most favorable to the plaintiffs, the conduct of the individual defendants was objectively unreasonable when applied against the [subjective] deliberate indifference standard." *Id.* (citation omitted). This results in an objective consideration of whether an official's actions were reasonable in light of his subjective awareness of risk and response to that risk.

The plaintiffs claim the district court erred for two reasons. First, the district court applied an incorrect standard of law. Second, the district court erred in failing to draw all reasonable inferences in their favor.

A. Application of Correct Legal Standard

The plaintiffs claim the court erred by requiring a showing of prior serious incidents of abuse that had been officially confirmed as the exclusive

means of establishing deliberate indifference. To the contrary, the district court held that the plaintiffs must prove the defendants had subjective awareness of the risk from either actual knowledge or the obviousness of the risk. The plaintiffs have failed to meet this burden. And even if they had, they have still failed to show that the defendants' response was unreasonable.

While the district court evaluated the defendants' conduct collectively, this court's precedent holds that we should separately examine the conduct of each defendant who has been sued in his individual capacity. *Jacobs*, 228 F.3d at 395. Accordingly, we examine qualified immunity as to each defendant. This inquiry is complicated by the fact that both parties have treated all defendants as indistinguishable. The record reveals that the defendants had varying levels of involvement with the Nixon facility. The varying relationship impacts not only the level of knowledge that could be expected of each defendant but also the appropriateness of each defendant's response. The plaintiffs allege the defendants had actual awareness of a significant risk of harm and also awareness that came from the obviousness of the danger.

The actual awareness of a substantial risk of abuse allegedly was shown by past instances of alleged and confirmed physical and sexual abuse and by express warnings given by several individuals. In particular, the defendants were made aware in September 2006 of an incident of sexual misconduct that had occurred earlier that year, namely, that a female staffer was caught with her pants down in a bathroom with a minor kneeling in front of her.

Further, the plaintiffs allege that the defendants had received repeated warnings from Hillary Chester, who worked for the International Catholic Migration Commission and closely monitored activities at Nixon. In her deposition, she described her frequent contacts with the individual defendants; the concerns and recommendations she expressed to them; and especially her

belief that there was too much forceful, physical contact by staff to control the children's behavior. According to the plaintiffs, Chester first warned Wolde in the summer of 2005 that Garza was too strict and sometimes yelled at the children. Chester stated that she understood Garza was later removed from direct interaction with the children and became a staff supervisor. Chester remained concerned that Garza's methods continued to affect how staff dealt with the children. Chester also warned De La Cruz in the spring of 2006 of two instances of unjustified force. One incident involved Garza forcefully breaking up a fight and the other involved a runaway being brought back to the facility with his arms behind his back. Chester informed Wolde of these incidents later that fall.

After the defendants received notice of the bathroom incident, they all met in November 2006 with Corey Buck, the investigator assigned to Nixon by the Texas Department of Family Protective Services. At this meeting, Buck informed the defendants of several additional allegations of abuse, including: (1) a report of a female staffer inappropriately kissing a resident, (2) an unresolved report that a staffer had struck a resident on the head, (3) a confirmed report that a staffer had used improper restraints in June 2006, and (4) an allegation of sexual abuse that was later recanted.

The plaintiffs also allege that these incidents, along with other known conditions, created an obvious risk of danger. For example, they allege that the defendants were aware that the facility was operating like a boot-camp, that there had been a dramatic increase in reported complaints and runaways in the fall of 2006, that behavior protocols had been abandoned, and that a social worker had resigned because of the conditions at the facility.

The plaintiffs argue that the defendants were not only subjectively aware of a substantial risk of harm, but that they also responded with

deliberate indifference to that harm. They allege that the defendants failed to implement adequate protective measures. In particular, the plaintiffs argue the defendants should have: (1) better enforced the prohibition on staffers entering bedrooms and bathrooms without an escort, (2) immediately held training sessions after learning of the sexual abuse in September instead of delaying trainings until November, (3) interviewed each of the victims, (4) reviewed all personnel files, (5) reduced the number of beds in November, and (6) sent additional monitors to observe the behavior at the facility.

The district court found that the plaintiffs failed to prove either actual awareness or the obviousness of danger. The court noted that at the time the plaintiffs were abused, the defendants were aware, at most, of one confirmed case of sexual abuse and one confirmed case of physical abuse. And both of the perpetrators of those abuses had been suspended or terminated. The court thus determined that those instances were not enough to establish a pattern of abuse sufficient to provide notice or render the risk of physical abuse obvious. The court acknowledged that the defendants had received warnings from Chester and Buck, but determined that those warnings were insufficient to create an obvious risk of physical or sexual abuse.

Finally, the court determined that even if the defendants were subjectively aware of a substantial risk of abuse, they were not deliberately indifferent to that risk. Regardless of whether their responses were effective, the court found that they were adequate.

We now examine the evidence relevant to each defendant.


*i. Jose Gonzalez*

Gonzalez was the FFS assigned to the Nixon facility beginning in August 2006. Previously, De La Cruz was the FFS for Nixon, but thereafter he was

No. 13-50890

Gonzalez's supervisor. Gonzalez estimated he spent approximately sixty percent of his time at Nixon. After the defendants learned of the bathroom incident, Gonzalez started spending at least three days a week at the facility.

We start by examining previous deliberate indifference cases involving claims of physical and sexual abuse of minors and young adults. The plaintiffs have argued that the present case is similar to *Doe v. Taylor Independent School District*, 15 F.3d 443 (5th Cir. 1994). In that opinion, we established a standard for evaluating supervisory officials in deliberate indifference cases involving sexual abuse in schools. *Id.* at 454. We noted that a plaintiff satisfies the requirement of proving subjective awareness by showing that "the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student . . . ." *Id.* We held that the plaintiff met this burden by showing that the principal received multiple complaints from different parents over a period of several years indicating that a particular teacher was sexually abusing students. *Id.* at 456.

We applied this same standard in a case involving a claim of deliberate indifference to hazing. *Alton*, 168 F.3d at 200. We explained that subjective knowledge may only be established by showing that "the officials learned of facts or a pattern of inappropriate hazing behavior by a subordinate pointing plainly toward the conclusion that the subordinate was abusing the student . . . ." *Id.*

In a case alleging deliberate indifference by the police, this court held that subjective knowledge requires "notice of a pattern of similar violations . . . ." *Estate of Davis*, 406 F.3d at 383.

We later explained that officials do not have to be aware of the exact risk of harm to have subjective awareness. *Hernandez*, 380 F.3d at 881. Rather,

an official need only be aware of facts clearly demonstrating that the risk of severe physical abuse to a child's bodily integrity is obvious. *Id.* Thus, a social worker can be subjectively aware that a child is in danger if she knows that the child's foster parents have previously abused other children, even though she does not know of the specific danger. *Id.* at 882.

The district court determined that the pattern of abuse alleged by the plaintiffs was insufficient to create subjective awareness. We agree. The district court correctly noted that "[p]rior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Estate of Davis*, 406 F.3d at 383 (citation omitted). The burden of proving notice of a pattern of similar violations was satisfied in *Doe* because the principal had been repeatedly warned of multiple instances of sexual abuse by a particular individual. 15 F.3d at 456. The same cannot be said here. At the time of the alleged abuse, Gonzalez was aware, at most, of one prior incident of sexual abuse and one prior incident of physical abuse. He had been told by Chester, the independent monitor, of her concerns about physical restraint protocols at Nixon, but her suggestion was that Nixon should establish a more regimented set of steps to deal with children's behavior. Gonzalez was not on notice of the continuous nature of the problems. Both of the perpetrators of the abuse had been terminated or suspended and no longer posed a threat to the children. The other allegations are not sufficiently similar to create a pattern of abuse.

The district court also correctly noted that the allegations the plaintiffs argued had created an obvious risk of danger are insufficient to prove subjective awareness. In *Hernandez*, we concluded that the risk of abuse was obvious because the social workers knew that the foster parents were guilty of several previous incidents of abuse. 380 F.3d at 882. In *Farmer*, in the context

14

of prison attacks, the Court explained that a risk may be obvious when inmate attacks were "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past . . . ."  511 U.S. at 842 (quotations and citation omitted).  An official may also be aware of an obvious danger by knowing that "rape was so common and uncontrolled that some potential victims dared not sleep [but] instead . . . would leave their beds and spend the night clinging to the bars nearest the guards' station . . . ."  *Id.* at 843–44 (quotations and citation omitted).  This is not the case here.  It is true that Gonzalez observed questionable behavior at the facility and was aware that the facility was not in compliance with the *Flores* agreement.  He was not shown, though, to be aware of an obvious risk of severe physical or sexual abuse.  The facts simply do not rise to the level of obviousness required by this court and the Supreme Court.

Even if Gonzalez was subjectively aware of a substantial risk of abuse, his response was reasonable, i.e., not deliberately indifferent.  Even when officials actually know "of a substantial risk to inmate health or safety [they] may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  *Id.* at 844.  We held that a principal was not entitled to qualified immunity because he failed to reasonably respond to repeated allegations of abuse.  *Doe,* 15 F.3d at 457.  Despite being repeatedly told of numerous incidents of abuse, the principal refused to respond to the abuse for several years.  *Id.* at 457.  The superintendent, on the other hand, at least made some response to the allegations.  *Id.* at 457–58.  He instructed the principal to speak to the victim and also personally undertook an investigation.  *Id.* at 458.  Thus, even though "[h]is actions were ineffective," they were "not deliberately indifferent."  *Id.*

Similarly, in *Hernandez*, we determined that even though the social workers were subjectively aware of a substantial risk of abuse, they were not

deliberately indifferent because they responded reasonably to the risk. 380 F.3d at 883–85. Although the social workers could have performed a more thorough investigation, they did not turn "a blind eye" to the allegations. *Id.* at 883. The social workers conducted several unannounced visits to the home and conducted at least some sort of investigation. *Id.* at 883–84. Thus, even though they may have been negligent, they were not deliberately indifferent. *Id.* at 884.

Proving deliberate indifference is difficult. The *Farmer* standard is not a negligence standard. *Hare,* 74 F.3d at 649–50. "We reject the suggestion that the proper measure of the duty to respond . . . ought to revisit negligence. Under that view negligence tossed out the front door re-enters through the back." *Id.* at 650.

We agree with the district court that the plaintiffs have failed to meet this high burden. The plaintiffs do not dispute that Gonzalez quickly responded after learning of the confirmed cases of abuse in September. Gonzalez revised his schedule to begin spending three days a week at the Nixon facility to monitor the staff more closely. He also worked with Wolde and De La Cruz to develop a policy that prohibited staff from entering bathrooms and bedrooms without an escort. Gonzalez also worked alongside the other defendants to review staffing procedures and ultimately scheduled additional training for November. Chester testified that Gonzalez seemed too focused on what he perceived to be certain positive results at Nixon, such as rapid family reunification. Chester acknowledged those benefits, but believed as Nixon took on an increasing number of children, the facility was not able to cope.

The plaintiffs argue that Gonzalez could have done more and suggest additional steps he could have taken. Those suggestions highlight possible negligence. They do not support the conclusion that Gonzalez turned a blind

eye to the allegations of abuse. Accordingly, Gonzalez was entitled to qualified immunity.

*ii. James De La Cruz*

As Gonzalez's supervisor, De La Cruz also had direct interactions with the Nixon facility. Although he was based in Houston, he made several trips to Nixon. There is no evidence or justifiable inference that De La Cruz was subjectively aware of a substantial risk of harm or that he responded with deliberate indifference to any harm.

Like Gonzalez, De La Cruz was aware of no more than one prior instance of physical abuse and one prior instance of sexual abuse at the time of the alleged abuse. De La Cruz had also received the warnings from Chester and Buck and was aware that Nixon had no shortage of problems. But none of these conditions created actual knowledge that there was a risk of severe sexual or physical abuse. Further, the conditions did not make a risk of abuse obvious. Thus, the plaintiffs failed to establish that De La Cruz had a subjective awareness of danger.

The evidence also indicates that De La Cruz responded reasonably to the allegations of abuse. Along with Wolde and Gonzalez, he traveled to Nixon in November to review staffing concerns. The plaintiffs admit that De La Cruz visited Nixon shortly after learning of the abuse, "staying for days, working long hours." Again, the plaintiffs assert that De La Cruz could have done more, such as implementing a response program and reducing the number of beds at the facility. These are not claims of deliberate indifference, but rather negligence, and are insufficient to establish a constitutional violation. Accordingly, De La Cruz is entitled to qualified immunity.

No. 13-50890

*iii. Tsegaye Wolde*

Wolde served as the ORR Project Officer and was based in Washington, D.C. Among the three defendants, Wolde had the fewest direct interactions with the facility. Nonetheless, Chester had numerous contacts with Wolde, so he was kept informed. Because we conclude that Gonzalez and De La Cruz lacked subjective awareness and because there is no indication that Wolde was aware of any additional facts, it is unnecessary to examine his awareness or response in detail. Like the other two defendants, Wolde was not subjectively aware of a substantial risk of harm. Further, his response was not unreasonable. Thus, he is entitled to qualified immunity.

B. Reasonable Inferences in Favor of the Plaintiffs.

The plaintiffs also claim that the district court erred by failing to draw all reasonable inferences in their favor. We have already determined that the plaintiffs have failed to show either a subjective awareness of danger or that the defendants failed to respond reasonably. Addressing this additional issue would not affect the outcome of the case and is therefore unnecessary.

Plaintiffs failed to offer evidence to create a dispute of material fact that the defendants had actual awareness of a substantial risk of harm or that the risk was obvious. The plaintiffs have also failed to show that the defendants responded unreasonably.

AFFIRMED.

18