# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

August 12, 2010

No. 10-30012
Summary Calendar

Lyle W. Cayce
Clerk

JASMINE M. WINSTON,

Plaintiff–Appellant

v.

CITY OF SHREVEPORT; MIKE VANSANT; D. R. SAWYER, Corporal; W. J. WILLIS, Officer,

Defendants–Appellees

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:08-cv-00111

Before BENAVIDES, PRADO, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Jasmine M. Winston appeals the district court's grant of summary judgment in favor of Officer W. J. Willis and former Interim Chief of Police Mike Vansant on her § 1983 claim for false arrest, supervisory liability, and related state torts. The district court found that qualified immunity shielded Officer Willis because he acted reasonably under the circumstances, and that Winston

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

had failed to demonstrate that Chief Vansant had either failed to train or supervise his officers, or had acted with deliberate indifference in allegedly failing to train or supervise them.

On appeal, Winston argues that (1) no reasonable officer could have believed there existed probable cause to arrest her for any of her charged crimes, and thus Officer Willis is not entitled to qualified immunity on her false arrest claim; (2) she has sufficiently demonstrated that Chief Vansant failed to train and supervise his subordinates, and this failure amounted to deliberate indifference; and (3) because the district court erred when it granted summary judgment as to her federal claims, it also erred in doing so with regard to her pendent state claims for false imprisonment, excessive force, and vicarious liability.  Because we agree with the district court that (1) qualified immunity shields Officer Willis, (2) Winston failed to demonstrate that Chief Vansant was deliberately indifferent, and (3) these conclusions suffice to defeat Winston's state tort claims as a matter of law, we affirm the district court's grant of summary judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In January 2007, Shreveport police officers, including Officer Willis and Corporal D.R. Sawyer, responded to a request to assist with crowd control of a riot type situation at a local downtown nightclub known as "Club Ice." Approximately 1,500 people were inside the club attending a concert, and an additional 500 gathered outside.  Based on the large number of people, dispatchers requested that all available officers from all four areas of Shreveport respond. Between twenty and forty uniformed, undercover, and off-duty officers assisted to keep several disturbances in the crowd from erupting into violence.

A Shreveport fire investigator determined that Club Ice's occupancy had exceeded its capacity, and the officers were instructed to prevent anyone from entering the club.  In response, the officers issued commands to the crowd to

No. 10-30012

disperse, both verbally and over patrol car PA systems. The commands continued for approximately thirty minutes, and at times, the officers physically pushed people away from the entrance of the building. After some time had passed, part of the crowd had dispersed, but approximately 150–200 people remained outside the club.

After Officer Willis had been present at the club for about a half-hour, Winston, who had previously been drinking at a night club next door, attempted to gain entrance to Club Ice through a side door. Officer Willis watched as Winston tried to maneuver around another, unidentified police officer. Officer Willis then stepped between Winston and the unidentified officer, using his baton to push Winston away from the club.

According to Officer Willis and Corporal Sawyer, Winston struck Officer Willis twice: once in the jaw, and again on top of his head. Winston alleges that she simply flailed her arms as she lost her balance and did not mean to strike Officer Willis, but concedes that the officers could have construed this as an attack. Corporal Sawyer responded by grabbing Winston around the shoulder area and forcing her to the ground, where she struck her face on the sidewalk, injuring her lips and teeth. The officers then arrested Winston and removed her from the scene, and she was subsequently charged with refusal to disperse, resisting arrest, and battery on a police officer.

Winston filed suit, alleging false arrest and excessive use of force claims against Officer Willis and Corporal Sawyer; *Monell* claims for unlawful policies and practices, which allegedly caused or contributed to her injuries, against the City of Shreveport, the Shreveport Police Department, and Chief Vansant; and pendent state law claims based on direct and vicarious liability. The defendants collectively moved for summary judgment, asserting that Corporal Sawyer and Officer Willis were shielded by qualified immunity and that Winston produced no evidence to support a *Monell* claim.

No. 10-30012

Shortly thereafter, Corporal Sawyer and the City of Shreveport made an offer of judgment pursuant to Federal Rule of Civil Procedure 68,[1] which Winston accepted. Based on the offer, the district court entered an order of partial judgement against the City of Shreveport and Corporal Sawyer. This disposition provided that Winston's only remaining claims were against Officer Willis for false arrest and excessive use of force, and against the Shreveport Police Department and Chief Vansant for supervisory liability.

The district court then granted summary judgment in favor of Officer Willis, the Shreveport Police Department, and Chief Vansant. As to Officer Willis, the district court found that (1) he had probable cause to arrest Winston for failure to disperse, and was thus entitled to qualified immunity on Winston's false arrest claim;[2] and (2) Winston failed to raise a genuine issue of material fact as to whether Officer Willis used excessive force, and he was thus entitled to qualified immunity on that claim as well.[3] As to the Shreveport Police Department and Chief Vansant, the district court found the record entirely devoid of evidence demonstrating failure to train, supervise, or discipline Officer Willis, and that any alleged failure did not amount to deliberate indifference. Finally, the district court found that because Officer Willis acted reasonably

---

[1] Rule 68 provides that:

> At least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued. If, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment.

[2] Finding that Officer Willis had probable cause to arrest Winston for failure to disperse, the district court did not squarely address whether he had probable cause to arrest Winston for the other violations, although it opined, in a footnote, that he probably had probable cause to arrest her for battery on a police officer as well.

[3] On appeal, Winston no longer argues that Officer Willis used excessive force.

4

No. 10-30012

under the circumstances, Winston's state law claims for direct and vicarious liability failed.  Winston timely appealed.[4]

## II.  STANDARD OF REVIEW

"We review the district court's grant of summary judgment *de novo*, applying the same standard as the district court."  *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 228–29 (5th Cir. 2010) (citing *Golden Bridge Tech., Inc. v. Motorola, Inc.*, 547 F.3d 266, 270 (5th Cir. 2008)).  Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c). "Factual controversies are construed in the light most favorable to the nonmovant, but only if both parties have introduced evidence showing that an actual controversy exists."  *Lynch Props., Inc. v. Potomac Ins. Co. of Ill.*, 140 F.3d 622, 625 (5th Cir. 1998) (citing *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

## III.  ANALYSIS

On appeal Winston advances several arguments.  First, she contends that no reasonable law enforcement officer would have, or could have, believed that there was probable cause to arrest her, and therefore the district court erred by finding Officer Willis entitled to qualified immunity on her false arrest claim. Next, she argues that she offered sufficient evidence to survive summary judgment on her supervisory liability claim against Chief Vansant.  Finally, she alleges that the district court erred when it dismissed her state law claims.  We address each argument in turn.

---

[4] This Court granted the Shreveport Police Department's unopposed motion for dismissal.  The only remaining parties to this appeal are Officer Willis and Chief Vansant.

## A.    False Arrest Claim against Officer Willis

Qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  In order to determine whether qualified immunity shields an official, the Supreme Court, in *Saucier v. Katz*, mandated a two-step analysis, in which a court must determine whether "the facts alleged show the officer's conduct violated a constitutional right."  533 U.S. 194, 201 (2001).  A court must also ask "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct."  *Pearson*, 129 S. Ct. at 816 (citing *Saucier*, 533 U.S. at 201).  The Supreme Court has recently held that "[t]he judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id*. at 818.

The second step involves a determination of whether "the conduct was objectively reasonable in light of clearly established law at the time that the challenged conduct occurred," and that "[t]he touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law." *Glenn v. City of Tyler*, 242 F.3d 307, 312 (5th Cir. 2001) (citations omitted)  "This means that '[e]ven law enforcement officials who reasonably but mistakenly [commit a constitutional violation] are entitled to immunity.'" *Id*. (quoting *Goodson v. Corpus Christi*, 202 F.3d 730, 736 (5th Cir. 2000) (alteration in original)).

Because "[t]he constitutional claim of false arrest requires a showing of no probable cause," *Club Retro L.L.C. v. Hilton*, 568 F.3d 181, 204 (5th Cir. 2009)

No. 10-30012

(citation omitted), Officer Willis is entitled to qualified immunity "if officers of reasonable competence could disagree" that Officer Willis had probable cause to arrest Winston for any of the crimes for which she was charged. *See Babb v. Dorman*, 33 F.3d 472, 477 (5th Cir. 1994) (citation and internal quotation marks omitted).  The Supreme Court has defined probable cause as the "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense."  *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (citations omitted). Furthermore, this Court has stated that probable cause "does not demand any showing that [the belief that an offense was committed] be correct or more likely true than false," because "the probable cause analysis only requires that we find a basis for an officer to believe to a 'fair probability' that a violation occurred." *Piazza v. Mayne*, 217 F.3d 239, 246 (5th Cir. 2000) (citations omitted) (alteration in original).

The district court correctly found that if Officer Willis had probable cause to arrest Winston for any charge, it did not need to examine whether probable cause existed for the additional charges. *See Wells v. Bonner*, 45 F.3d 90, 95 (5th Cir. 1995) ("The claim for false arrest does not cast its primary focus on the validity of each individual charge; instead, we focus on the validity of the arrest. If there was probable cause for any of the charges . . . then the arrest was supported by probable cause, and the claim for false arrest fails.").  Of the three charges lodged against Winston—refusal to disperse, resisting arrest, and battery on a police officer—the district court only decided that Officer Willis had probable cause to arrest Winston for failure to disperse.  With regard to that charge, Louisiana Revised Statute § 14:329.3 provides that:

> Any law enforcement or peace officer or public official responsible for keeping the peace may issue a command to disperse under the

7

No. 10-30012

authority of R.S. 14:329.1-14:329.8 if he reasonably believes that riot is occurring or about to occur. The command to disperse shall be given in a manner reasonably calculated to be communicated to the assemblage.

Whoever willfully fails to comply with a lawful command to disperse shall be punished in accordance with the provisions of R.S. 14:329.7.

Louisiana Revised Statute § 14:329.1, in turn, defines a "riot" as:

[A] public disturbance involving an assemblage of three or more persons acting together or in concert which by tumultuous and violent conduct, or the imminent threat of tumultuous and violent conduct, results in injury or damage to persons or property or creates a clear and present danger of injury or damage to persons or property.

Winston contends that no reasonable officer could have believed that a riot was occurring or about to occur at the time of the encounter, and that no reasonable officer could believe that Winston had been given a lawful command to disperse. Both the record and her own testimony, however, belie her argument. Officer Willis responded to "riot type" conditions where up to forty officers were trying to prevent a volatile situation involving approximately 500 people from escalating. When he arrived, officers were trying to dispel several disturbances in the crowd and attempting to prevent others from commencing. Even after approximately 300 individuals from the crowd had dispersed, Winston herself testified that at the time of her encounter with Officer Willis, the scene "kind of exploded," and officers were both screaming and in the process of physcially detaining those around her. Based on these circumstances, the officers were well within their authority to conclude that a riot, as defined by section 14:329.1, was imminent, and could thus lawfully issue commands to disperse.

Additionally, Winston stated in her deposition that she was aware that Officer Willis directed her to move back, and that she did not do so. Under these circumstances, Officer Willis reasonably believed that he had probable cause to

8

arrest Winston for failure to disperse.  As such, he is entitled to qualified immunity on Winston's false arrest claim.[5]

## B.     Supervisory Liability Claim against Chief Vansant

Supervisory officials may not be held liable under § 1983 for the actions of subordinates on theories of vicarious liability or respondeat superior.  *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Instead, Winston must demonstrate that (1) Chief Vansant failed to supervise or train his subordinate officials; (2) a causal link exists between the failure to train or supervise and the violation of Winston's rights; and (3) the failure to train or supervise amounted to deliberate indifference.  *Id.*

We have held, with respect to the third prong, that "'deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action," and that "for an official to act with deliberate indifference, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* (citations and internal quotation marks omitted).  Additionally, "[d]eliberate indifference requires a showing of more than negligence or even gross negligence," and "[t]o satisfy the deliberate indifference prong, a plaintiff usually must demonstrate a pattern of violations and that the inadequacy of the training is obvious and obviously likely to result in a constitutional violation."  *Id.* (citations and quotations marks omitted).

Here, Winston offered the testimony of an expert who opined that the technique employed by Corporal Sawyer to throw Winston to the ground after

---

[5] Because we hold that Officer Willis reasonably believed that he had probable cause to arrest Winston for failure to disperse and is thus entitled to qualified immunity, we do not address whether he reasonably believed that he had probable cause to arrest Winston for resisting arrest or battery on a police officer.

she struck Officer Willis was unwarranted, and that if the Shreveport Police Department taught and Chief Vansant approved the technique, the system was flawed. Winston also offered the deposition testimony of Corporal Sawyer who asserted that he believed that he used a proper technique because it was in accordance with the technique taught to him at the Shreveport Police Academy. Based on this evidence, Winston contends that Chief Vansant should have properly supervised the officers, withdrawn the policy, and offered proper retraining.

Winston, however, has failed to offer any additional evidence that would tie Corporal Sawyer's activity with any alleged failure by Chief Vansant personally to train, supervise, or discipline his officers. At no point does she assert that Chief Vansant trained Corporal Sawyer at the Academy, or implemented, endorsed, advocated, or was even aware of his officers' use of the challenged technique. Likewise, she does not advance any evidence that Chief Vansant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm" existed should this technique continue to be used, nor has she demonstrated that Chief Vansant, in fact, "dr[e]w the inference." *Id.* Additionally, Winston fails to demonstrate any "pattern of violations"; rather she offers her own sole incident with Corporal Sawyer. *See id.* Winston's failure to offer any proof of a pattern of violations demonstrates that any alleged wrongdoing on the part of Chief Vansant could be characterized as merely negligence, rather than the requisite deliberate indifference. As such, we hold that the district court correctly found that Winston's § 1983 supervisory liability claim against Chief Vansant fails as a matter of law.

## C.    State Law Claims

Under Louisiana law, we apply the same "reasonableness" standard to Winston's state law claims of false arrest and excessive force that we apply when analyzing whether qualified immunity shields Officer Willis against Winston's

No. 10-30012

federal constitutional claims. *See Reneau v. City of New Orleans*, No. Civ.A. 03-1410, 2004 WL 1497711, at \*3–\*4 (E.D. La. July 2, 2004) (citing *Kyle v City of New Orleans*, 353 So. 2d 969, 973 (La. 1977)). As discussed above, Officer Willis acted reasonably throughout his encounter with Winston. We thus hold that Winston's state law claims for direct and vicarious liability fail as a matter of law.[6]

## IV. CONCLUSION

Because Officer Willis reasonably believed that he had probable cause to arrest Winston for refusal to disperse, he is entitled to qualified immunity on Winston's false arrest claim. Additionally, because Winston has not demonstrated that Chief Vansant failed to adequately train Corporal Sawyer, or that any alleged failure to train rose to the level of deliberate indifference, the district court correctly granted summary judgment in favor of Chief Vansant on Winston's supervisory liability claim. Finally, because Louisiana law adopts the same "reasonableness" standard used in determining whether qualified immunity applies, the district court correctly granted summary judgment in favor of Officer Willis and Chief Vansant on Winston's state law claims for false arrest, excessive force, and vicarious liability. We therefore affirm the district court's grant of summary judgment.

AFFIRMED.

---

[6] Contrary to Winston's suggestion, the fact that the City of Shreveport and Corporal Sawyer extended an offer of judgment under Rule 68 does not impart liability to Chief Vansant or Officer Willis. *Cf. Meadours v. Ermel*, 483 F.3d 417, 422 (5th Cir. 2007) (holding that, in the qualified immunity context, each defendant's actions must be evaluated individually).

11